IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYRONE LEWIS-BEY** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **TOM WOLFF, et al.** | : | **NO. 16-3685** |

**MEMORANDUM**

**SLOMSKY, J.**                                                                                                  **JULY 25, 2016**

Plaintiff Tyrone Lewis-Bey, a prisoner at the Philadelphia Detention Center, brings this action pursuant to 42 U.S.C. § 1983, essentially based on his conviction and imprisonment for violating probation, and the conditions he was subjected to while incarcerated at the Curran-Fromhold Correctional Facility. He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant plaintiff leave to proceed *in forma pauperis* and dismiss his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), with the exception of his claims against Officer Jones, Officer Sam, and Officer Wingfield.

## I.    FACTS[1]

Plaintiff's claims can be separated into essentially two groups: (1) claims concerning conduct related to his being found guilty of violating probation and his related imprisonment; and (2) claims concerning the conditions in which he was confined while incarcerated.

After plaintiff was incarcerated on a probation detainer, the Honorable Donna Woelpper found plaintiff guilty of violating his probation sentenced him to serve six to twenty-three months of imprisonment. *See Commonwealth v. Lewis*, Docket No. CP-51-CR-0001626-2013. Plaintiff alleges that his sentence is "illegal" and was imposed without due process. Among

---

[1] The following facts are taken from the complaint and the publicly available docket for the criminal proceeding underlying plaintiff's claims.

1

plaintiff's grievances is the fact that Judge Woelpper typed his name in capital letters, which he believes misrepresents him and was intended to cause him injury. He filed an appeal of his sentence, which is currently pending before the Pennsylvania Superior Court.

Plaintiff alleges that, in the midst of his appeal, someone from the court sent certain paperwork back to him without docketing it, specifically, an "Affidavit of Fact/Writ of Discovery" and a Writ of Mandamus. He also alleges that Court Reporter Valerie Bostic, the stenographer at his violation of probation hearing, prepared a transcript that did not accurately reflect the record of what was said at the hearing.

In addition to his challenges to his conviction, plaintiff raises claims based on the conditions of his confinement at the Curran-Fromhold Correctional Facility between January 8, 2016 and January 27, 2016. He alleges that, upon intake, he was strip-searched and his property was taken, including a pair of boots that were destroyed by prison staff. Plaintiff was not permitted to access numbers in his cell phone, which he alleges "hinders due process, like the ability to call for bail or money for commissary if there's no bail and for defense measures whether attorney or other." He also alleges that Officer Rodgers recovered $100 from one of plaintiff's shoes, confiscated the money for himself, and charged plaintiff with bringing contraband into the jail. After a disciplinary hearing, Captain Love found plaintiff guilty of bringing contraband into the facility. As a result of the incident, plaintiff was housed in punitive segregation for five days, where he was only entitled to one hour a day outside of his cell.

Plaintiff alleges that, when he was released from punitive segregation, Officer Jones sprayed him with "military grade" pepper spray after he got in an argument with Officer Sam. Plaintiff was also sprayed with pepper spray while he was defending himself from attack by another

inmate.[2] Plaintiff was placed back in punitive segregation and was not given any treatment for burns from the spray, the effects of which he felt for five days.   He also alleges that, upon intake, he was suffering from broken ribs and a hole in between his last two toes on his right foot and that Officer Sam denied him care for those conditions while he was in punitive segregation. He also alleges that Officer Sam denied him medication for pain and high blood pressure, as well as antibiotics, and denied him medical care when his foot was bleeding.  Plaintiff told Officer Wingfield that he was not receiving medical care, but Officer Wingfield allegedly did nothing in response.  On another occasion, Officers Sam and Wingfield were supposed to take plaintiff for medical attention to check his vitals, but they failed to do so.

Based on those allegations, plaintiff initiated this lawsuit, pursuant to 42 U.S.C. § 1983, against the following defendants:

(1) Governor Tom Wolf, who he sued because he is the "top executive of the Commonwealth of Pennsylvania," which plaintiff describes as an "unconstitutional entity that is the parent company of all the corporations that by rule of operation, violate the rights of the natural peoples of the land";

(2) the Pennsylvania Superior Court;

(3) Mayor Jim Kenney, who plaintiff sued because he is the "head of all these unconstitutional municipal agencies";

(4) Police Commissioner Richard Ross, who he sued for maintaining a policy of "unconstitutional stops and frisks and traffic stops";

(5) District Attorney Seth Williams, who plaintiff sued because he is "responsible for what his deputies do," and those deputies prosecuted plaintiff despite his challenges to the state court's jurisdiction;

(6) the Philadelphia Defender Association and "all listed employees";

(7) Judge Woelpper;

---

[2] It is not clear from the complaint whether plaintiff was sprayed with pepper spray twice or whether there was only one incident involving pepper spray.

(8) the "Phila Adult Probation/Parole Dept." and "all listed employees";

(9) Commissioner Blanche Carney, who plaintiff sued because she "is head of Phila Prisons" although "her subordinates are the ones who directly violated [plaintiff's] rights";

(10) Sheriff Jewell Williams, who plaintiff sued because "his deputies are the ones whom [sic] shackled [him] and transported [him] into the unlawfully delegated courtroom" and failed to act when plaintiff challenged the court's jurisdiction;

(11) Valerie Bostic, the stenographer who recorded plaintiff's sentencing;

(12) the "Commonwealth of Pennsylvania's Superior Court" and unknown employees;

(13) Keir Bradford-Grey, the Chief Defender for the Philadelphia Defender Association, who plaintiff sued because she is a supervisor of Olwyn Conway;

(14) Olwyn Conway, an Assistant Public Defender, who plaintiff sued because she acted as his defense attorney;

(15) Karl Baker, chief of the Appeal Division of the Philadelphia Public Defender, who plaintiff sued because he tried to convince plaintiff not to proceed with his sovereign citizen defense;

(16) Charles Hoyt, identified as chief probation officer;

(17) Ricardo Padilla, identified as a "supervisor";

(18) Onesa Wearing, a probation officer who plaintiff alleges "lied and said [plaintiff] was unemployed as of 2008" even though he has been employed as a barber since he was nineteen years old, and who "sent contact notices and warrant notices to [plaintiff's] address and [plaintiff] didn't answer so [a] warrant card was issued";

(19) Officer Wingfield;

(20) Officer Sam;

(21) Officer Jones;

(22) Officer Rogers;

(23) Sargent Colon, who plaintiff identifies as the "shift commander or supervisor of the officer/shift where [his] $100.00 was confiscated," who "arbitrarily signed off without investigation concerning whether the money was contraband";

4

(24) Sargent Thomas, who plaintiff identifies as the supervisor of the shift on which he was sprayed with pepper spray;

(25) Captain Love; and

(26) "Court Reporting System, Unknown Head of Operations."

Plaintiff asks the Court to expunge his "criminal history" and seeks monetary damages for, among other things, "the complete disregard that was used in achieving the conviction and incarceration." (Compl. ¶ V.)

## II.     STANDARD OF REVIEW

The Court grants plaintiff leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) apply, which require the Court to dismiss the complaint if, among other things, it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Ball v.*

---

[3] However, as plaintiff is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

5

*Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013).  As plaintiff is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III.   DISCUSSION

#### A.  Claims Against Supervisor Defendants

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  In other words, supervisors may not be held liable under § 1983 based on the unconstitutional conduct of their subordinates.  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015).  Instead, a supervisor must have directly participated in the violation of plaintiff's rights or knowingly acquiesced in the unconstitutional conduct of his or her subordinates.  *Id.*

Here, it is apparent from the complaint that plaintiff's claims against many of the defendants are based on the allegedly unconstitutional conduct of those defendants' subordinates rather than their own conduct.   Plaintiff sued Governor Wolf and Mayor Kenney solely because they are in charge of the relevant state and municipal governments, not because of their personal involvement in any alleged constitutional violations.  Similarly, plaintiff's allegations establish that his claims against District Attorney Seth Williams, Chief Public Defender Keir Bradford-Grey, Commissioner Blanche Carney, and Sheriff Jewell Williams are based solely on the conduct of those defendants' subordinates.  It also appears that plaintiff included Charles Hoyt, Ricardo Padilla, Sargent Thomas, and "Court Reporting System, Unknown Head of Operations" as defendants because those defendants are supervisors of individuals who allegedly violated plaintiff's rights.  As supervisors are not liable under § 1983 based solely on the conduct of their

subordinates, the Court will dismiss plaintiff's claims against Governor Wolf, Mayor Kenney, District Attorney Williams, Chief Public Defender Bradford-Grey, Commissioner Carney, Sheriff Williams, Charles Hoyt, Ricardo Padilla, Sargent Thomas, and "Court Reporting System, Unknown Head of Operations," for failure to state a claim.[4]

Plaintiff named Police Commissioner Richard Ross as a defendant because he maintained a policy of "unconstitutional stops and frisks and traffic stops." That allegation is too conclusory to state a claim against Police Commissioner Ross. Furthermore, as the complaint does not allege any facts establishing that plaintiff was subjected to an unconstitutional stop, frisk, or traffic stop, there is no basis for concluding that Commissioner Ross violated plaintiff's constitutional rights. Accordingly, the Court will dismiss the claims against Commissioner Ross.

### B. Claims Based on Plaintiff's Conviction and Imprisonment

Plaintiff's claims challenging the constitutionality of his conviction and imprisonment are not cognizable in a civil rights action. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Furthermore, "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted). That principle

---

[4] Additionally, District Attorney Williams is entitled to absolute prosecutorial immunity. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 339 (2012).

7

applies when a plaintiff challenges the constitutionality of his detention on a parole or probation violation as well as when a plaintiff claims that inaccurate transcripts of his criminal proceeding violated his due process rights. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (applying *Heck* to a claim of unlawful detention based on parole board decision); *Tedford v. Hepting*, 990 F.2d 745, 749-50 (3d Cir. 1993) (due process claim for damages against court reporters, among others, for allegedly tampering with transcript was not cognizable in a § 1983 action "absent a successful challenge to the underlying conviction").

Here, it is apparent that plaintiff's challenges to the constitutionality of the proceedings before Judge Woelpper, the accuracy of the transcripts from those proceedings, and his related detention are not cognizable in a § 1983 proceeding. Accordingly, the Court will dismiss those claims. That conclusion resolves plaintiff's claims against the Pennsylvania Superior Court, the Philadelphia Defender Association and "all listed employees," Judge Woelpper, the "Phila Adult Probation/Parole Dept." and "all listed employees," Valerie Bostic, the "Commonwealth of Pennsylvania's Superior Court" and unknown employees, Olwyn Conway, Karl Baker, and Onesa Wearing.[5] As plaintiff cannot cure the deficiencies in those claims, he will not be permitted to amend those claims because amendment would be futile.

---

[5] Plaintiff's claims against those defendants fail for other reasons. First, Judge Woelpper is entitled to absolute judicial immunity from plaintiff's § 1983 claims. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Second, the Pennsylvania courts, including their departments of probation and parole, are entitled to Eleventh Amendment immunity and, in any event, are not persons for purposes of § 1983. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005). Those principles would also preclude any claims against the Philadelphia Municipal Court, in the event plaintiff sought to sue that court as well. Third, public defenders are not state actors under § 1983 based solely on their position as defense counsel. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). Fourth, any prosecutors who plaintiff sought to sue would be entitled to absolute immunity for their roles in prosecuting the claims against plaintiff. *See Imbler v. Pactman*, 424 U.S. 409, 430 (1976). Finally, in the event that plaintiff intended to raise claims against any of those defendants that did not challenge his conviction, the proceedings that led to

### C. Claims Challenging Plaintiff's Conditions of Confinement

All that remains are plaintiff's claims against Officer Wingfield, Officer Sam, Officer Jones, Officer Rogers, Sargent Colon, and Captain Love based on plaintiff's challenges to the conditions of his confinement at the Curran-Fromhold Correctional Facility.

Plaintiff alleges that Officer Rodgers stole $100 from him and then falsely charged him with a misconduct based on an allegation that plaintiff brought contraband—i.e., the money in his shoe—into the jail. He appears to be alleging that Sargent Colon violated his constitutional rights by accepting Officer Rodgers's conclusion that plaintiff brought contraband into the jail and failing to further investigate. Captain Love appears to have been named as a defendant because he found plaintiff guilty of the misconduct alleged. The complaint reflects that plaintiff was in punitive segregation for five days as a result of the misconduct. Plaintiff also alleges that he was strip-searched upon intake, that other property of his was taken and/or destroyed according to prison policy, and that he was denied access to his cell phone.

"[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin v. Conner*, 515 U.S. 472 (1995)). Furthermore, "mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *Id.* at 654. Here, nothing in plaintiff's allegations concerning the allegedly false misconduct he received upon intake or his related five-day confinement in punitive segregation suggests a plausible basis for a due process claim. *See Banks v. Rozum*, No. 15-2121, --- F. App'x ---, 2016 WL 624943, at *2 (3d Cir. Feb.

---

his conviction, or his imprisonment, he has not alleged sufficient facts to establish that the defendants violated his constitutional rights in any respect.

17, 2016) (per curiam); *Gay v. Shannon*, 211 F. App'x 113, 116 (3d Cir. 2006) (per curiam). Indeed, the complaint reflects that plaintiff received notice of the basis for the misconduct and a disciplinary hearing.

Furthermore, property loss caused by the intentional acts of government officials does not give rise to a due process violation where a post-deprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). State law and prison grievance systems may be adequate remedies. *See Mattis v. Dohman*, 260 F. App'x 458, 461 (3d Cir. 2008) (per curiam); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000). Here, if plaintiff was dissatisfied with the handling of his grievances, he had an adequate remedy under the Pennsylvania Tort Claims Act to rectify any deprivations of property. *See* 42 Pa. Cons. Stat. § 8550; *Smith v. City of Philadelphia*, No. CIV. A. 97-6166, 1998 WL 54388, at *1 (E.D. Pa. Jan. 30, 1998) ("[T]he Pennsylvania Tort Claims Statute provides a meaningful postdeprivation remedy by which plaintiff can attempt to recover for the loss of his personal property from city or county officials."). Accordingly, he cannot state a due process claim based on his allegation that Officer Rodgers took $100.00 from him or based on his allegation that other property of his was taken or destroyed.

Nor has plaintiff stated a claim based on his allegation that denial of access to his cell phone violates due process. Plaintiff does not allege how he was specifically harmed by the inability to access his cell phone or identify who was responsible for denying him access. Instead, he speculates that the inability to access the numbers in his phone "hinders due process, like the ability to call for bail or money for commissary if there's no bail and for defense measures whether attorney or other." That general, speculative allegation is insufficient to state a claim.

Turning to plaintiff's allegation that he was strip-searched upon intake, the Supreme Court has upheld a prison policy pursuant to which individuals "admitted to the general population [of a jail or prison might] be required to undergo a close visual inspection while undressed." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1513 (2012). To the extent plaintiff is challenging his strip search upon admission to the Curran-Fromhold Correctional Facility, he has not alleged facts suggesting that the search he was subjected to was of a different caliber than the search at issue in *Florence* such that it was unconstitutional.[6] *See Mucci v. Community Educ. Ctr., Inc.*, Civ. A. No. 13-5221, 2013 WL 5781105, at *2 (E.D. Pa. Oct. 25, 2013) (dismissing complaint based on strip-search where plaintiff failed to allege facts establishing search was outside scope of search at issue in *Florence*); *Barber v. Jones*, Civ. A. No. 12-2578, 2013 WL 211251, at *8 (D.N.J. Jan. 18, 2013) ("[B]ecause Plaintiff does not allege facts showing that he was strip searched in a manner or purpose that was so outside the scope of reasonable search policy that it would rise to the level of a Fourth Amendment violation, this Court will dismiss Plaintiff's § 1983 strip search claim for failure to state a claim upon which relief may be granted.").

Turning to plaintiff's remaining claims, he alleges that Officer Jones sprayed him with military grade pepper spray after which he was placed in punitive segregation without an opportunity to wash off the spray. He also alleges that Officer Sam and Officer Wingfield denied him medical care for various ailments on several occasions. Based on those allegations, the Court can discern a possible excessive force claim against Office Jones and claims against Officer Sam and Officer Wingfield for deliberate indifference to plaintiff's medical needs.

---

[6] Although plaintiff was housed in punitive segregation, the complaint reflects that he was housed there in connection with a disciplinary infraction that occurred in the course of the strip search or shortly thereafter.

11

Accordingly, plaintiff will be permitted to proceed on those claims at this time. If plaintiff is challenging his second stint in punitive segregation, which is unclear, he may also proceed on those claims, which appear to be part of the incident with Officer Jones.

### IV.   CONCLUSION

For the foregoing reasons, plaintiff's complaint will be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). Plaintiff will not be permitted to amend his claims challenging the constitutionality of his conviction and imprisonment, because the defects in those claims cannot be cured. However, he will be given an opportunity to file an amended complaint as to his other dismissed claims. If plaintiff fails to file an amended complaint, his complaint will only be served on Officer Jones, Officer Sam, and Officer Wingfield. An appropriate order follows.